RECEIVED
IN LAKE CHARLES, LA
JUN 13 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BERTIS LEE BROWN** | : | **DOCKET NO. 2:09 CV 1201** |
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMM. OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Presently before the court is the plaintiff's petition for review of the Commissioner's denial of social security disability benefits. This matter is before the court pursuant to §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), this court finds that the Commissioner's decision is not supported by substantial evidence in the record and this matter will be remanded for further proceedings consistent with this ruling. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## FACTS

The plaintiff, Bertis Lee Brown ("Brown"), was born in August, 1958, and he was fifty-one years old at the time he filed this appeal. At the time of the alleged onset of his disability, April 18, 2005, he was forty-six (46).

Mr. Brown has a sixth (6th) grade education, and is illiterate. (Tr.Pgs.52,62, 204,213, 222,223-224). His wife completed the hand-written forms in the administrative file. (Tr. Pgs.49- 56). Mr. Brown's past relevant work was primarily as a laborer, working as a deckhand, welder's helper, and construction laborer. (Tr.Pgs.213-215,222-223,224). Due to his work history prior to his onset

date, Mr. Brown remained insured for Disability Insurance Benefits through December 31, 2009. (Tr.Pg.47).

Mr. Brown suffers with a combination of severe physical and mental impairments, including chronic Hepatitis C (Grade 2 inflammatory process) with Stage 4 fibrosis (cirrhosis of the liver), chronic low back pain with lumbar facet disease and a disc dessication with mild right neural foraminal narrowing at L4-5 and L5-S1 with right sided symptoms, and depression/anxiety. Mr. Brown has utilized several treatment modalities to try to alleviate his symptoms, including physical therapy, lumbar epidural injections, and prescription pain medications, to no avail. Brown asserts that he has been unable to perform sustained, gainful activity since his onset date.

## PROCEDURAL HISTORY

On June 9, 2005, Brown filed applications for a Period of Disability and Disability Insurance Benefits, with an onset date of April 18, 2005. That application was denied, and on September 26, 2007, a hearing was held before Administrative Law Judge (ALJ) Lawrence T. Ragona. (Tr.Pgs.208-234). ALJ Ragona rendered an Unfavorable Decision on October 24, 2007. (Tr.Pgs.12-21). The Appeals Council denied Mr. Brown's Request for Review by letter dated, despite the submission of additional medical evidence (Tr.Pgs.114-207) and a brief outlining the errors committed by the ALJ (which is not contained in the transcript).

## STANDARD OF REVIEW

This court reviews the Commissioner's denial of social security benefits only to ascertain (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.[1] Substantial evidence is that which a

---

[1] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000).

reasonable mind might accept to support a conclusion.[2] "It is more than a mere scintilla and less than a preponderance."[3] When we apply the substantial evidence standard, "we scrutinize the record to determine whether such evidence is present. We may not reweigh the evidence, try the issues *de novo,* or substitute our judgment" for that of the Commissioner.[4]

In order to be eligible for disability benefits, the claimant must prove that he has a medically determinable physical or mental impairment, or combination of impairments, lasting at least twelve months that prevents her from engaging in a substantial gainful activity.[5] Substantial gainful activity is defined as work involving significant physical or mental abilities that is usually done for pay or profit.[6]

The ALJ engages in a five-step sequential evaluation process for determining whether an individual is disabled: (1) whether the claimant is presently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment, as defined by regulations; (3) whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in Appendix 1 of the regulations; (4) whether the impairment prevents the claimant from doing his past relevant work; and (5) whether the impairment prevents the claimant from doing

---

[2] *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

[3] *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995) (internal quotation marks omitted).

[4] *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (citation omitted), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *see Newton,* 209 F.3d at 452.

[5] 42 U.S.C. § 423(d)(1)(A).

[6] 20 C.F.R. § 404.1572(a) and (b).

any other work.[7]

Before considering the fourth and fifth steps, the Commissioner must determine the claimant's residual functional capacity (RFC).[8] The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from his impairments. In determining the RFC, the Commissioner must consider all of a claimant's impairments, including those that are not severe.[9]

The claimant bears the burden of proof on the first four steps and then the burden shifts to the Commissioner for the fifth step. If the claimant shows he is no longer capable of performing her previous jobs, the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy.[10]

## ASSIGNMENTS OF ERROR

Brown asserts two assignments of error:

I. The Appeals Council erred in failing to follow its own policies and procedures with regard to the additional evidence submitted to it. This resulted in a residual functional capacity assessment that was completely unsupported by the evidence as a whole, culminating in the ALJ's failure to sustain his burden at Step 5 by improperly relying upon the Medical-Vocational Guidelines to find Brown not disabled.

II. Brown should be found disabled pursuant to Medical-Vocational Rule 201.17.

---

[7] *Id.* § 404.1520(a).

[8] *Id.* §404.1520(e).

[9] *Id.* § 404.1545.

[10] *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987)

LAW AND ANALYSIS

Following the required five (5) step sequential evaluation process to determine whether Brown was disabled, the ALJ found at Step 1 that Brown had not engaged in substantial gainful activity since April 18, 2005. (Tr.Pg.17). Proceeding to Step 2, the ALJ determined that Brown had the "following severe impairments: hepatitis C and *mild* degenerative changes at L3-L4" (Tr.Pg.17), but that his impairments did not meet or equal a listed impairment at Step 3. (Tr.Pg.18). In Step 4, the ALJ found that Brown retained the residual functional capacity to "perform the full range of medium work. The claimant can lift/carry 50 pounds occasionally and 25 pounds frequently. He can stand/walk 6 hours of 8 and sit for 6 hours of 8." (Tr.Pg.18). Based upon that RFC, the ALJ found Brown not disabled at Step 5, applying *Medical-Vocational Rule 203.25*. (Tr.Pg.21).

In reaching his Decision, the ALJ determined that Brown's "allegations [were] not supported by the evidence of record" and therefore, not credible. The ALJ stated that he "cannot ignore the fact that claimant seeks very little, if any, medical treatment for his allegedly disabling back and liver complaints...[t]he [ALJ] noted the claimant emphasized his diagnoses rather than his symptoms and he tended to embellish his limitations..." (Tr.Pg.20).

Brown argues that such statements are contradicted by the totality of the evidence and the ALJ based his findings on an incomplete record. He argues that the ALJ must affirmatively develop the record in Social Security cases, even if the claimant is represented, due to the non-adversarial nature of the proceeding. [Social Security Act, §§ 223(d)(5)(B), 1614(a)(3)(G), as amended, 42 USCA 423(d)(5)(B), 1382c(a)(3)(G); 20 CFR § 416.912(d)(2)]. The Fifth Circuit has held, "...Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, see *Richardson v. Perales,*

5

402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Brown contends that the ALJ failed to develop the records relative to the September 2007 hearing adequately. When a claimant is unrepresented by counsel, the ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir.1984) (internal quotation and citation omitted). Brown was represented by counsel, Chris Smith (Tr. 208), at the hearing, so the ALJ's duty is lessened. The court will reverse an ALJ's decision for failure to develop the record adequately only if a claimant shows that he was prejudiced as a result of the hearing. *Bowling v. Shalala,* 36 F.3d 431, 437 (5th Cir. 1994).

Counsel on appeal, William Ziegler, argues that he was not counsel at the 2007 hearing and that upon meeting with Brown and reviewing the ALJ's Unfavorable Decision, it was noted that the most recent medical exhibits in the record considered by the ALJ were dated in August, 2005, two (2) years prior to the hearing. (Tr. Pgs.67-69,70-82,83-85,86-90, 91-100). The SSA was allegedly informed that Brown continued to seek treatment for his various impairments, and, in fact, in September, 2006, the SSA was advised that Mr. Brown was undergoing Pegintron and Ribasphere treatment for hepatitis C. (Tr.Pgs.58-60).

Once retained to represent Brown, Ziegler obtained updated medical evidence relative to Brown's claim for benefits and forwarded them to the Appeals Council. Those records included:

1) MRI- Lumbar spine dated April 22, 2005;

2) Updated records from Dr. Brett Casey with Houma Orthopedic Clinic from June 28, 2005 through February 21, 2006;

3) A Functional Capacity Evaluation performed on June 7, 2007;

4) Updated records from Oakdale Family Care from April 9, 2007 through December 10, 2007;

5) Updated records from Dr. Michael Haydel of the Pain Specialty Center from August 18, 2005 through February 12, 2008;

6) Terrebonne Physical Therapy Functional Capacity Evaluation from January 17, 2006 through January 19, 2006.

On December 10, 2007, Ziegler informed the Appeals Council (AC) of his representation and requested a copy of the hearing CD and Exhibits. (Tr.Pgs.10-11). He notes that, despite being notified of counsel's representation well over a year earlier, the AC erroneously sent the copies of the exhibits and duplicate hearing CD to Brown's prior counsel on January 16, 2009. Once the exhibits and hearing CD were received from prior counsel, a brief was submitted to the AC along with the additional medical evidence noted herein above. The additional medical evidence is included in the administrative transcript. (Tr.Pgs.114-207). On June 10, 2009, the AC issued its standard denial letter (again erroneously sent to prior counsel), stating that the additional evidence submitted by counsel "does not provide a basis for changing the Administrative Law Judge's decision." (Tr.Pgs.3-7).

Because Ziegler did not represent the plaintiff at the hearing, he seems to be taking the position that this court should, for all intents and purposes, consider the plaintiff unrepresented, when Brown was, in fact, represented by counsel. If Brown was represented by an attorney, the ALJ's obligation was vitiated, because that attorney took over the responsibility of insuring that the Brown received a complete and fair hearing. *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008).[11] It was that counsel's responsibility to develop the record, not the responsibility of the ALJ.

---

[11] In a case in which the claimant's attorney never mentioned that the claimant was being treated by a particular physician, and apparently made no effort to obtain the records from that physician, the court held that the ALJ could not be blamed for failing to develop the record.

Because Brown was not *pro se*, the ALJ did not have a heightened duty of factual exploration. *Bowling*, 36 F.3d at 437. *See also Social Security Disability Law and Procedure §6:8.*

The obligation of counsel at the hearing is separate from the duty of the Appeals Council to rehear the case if presented with new evidence. If the plaintiff receives additional evidence while the claim is pending before the Appeals Council, the claimant may and should present the evidence at that time. 20 C.F.R. §§ 404.970(b), 416.1470 (b). Ziegler presented evidence to the Appeals Council, but he asserts that there is no evidence that the Appeals Council considered that evidence, as a standard denial letter was issued.

The additional evidence submitted to the Appeals Council included two (2) Functional Capacity Evaluations (FCE): one done in January, 2006 and a second done in June, 2007. In the FCE of January, 2006, Brown was found capable of performing work at the "medium PDL [physical demand level] within the limits of the recommendation on pages 5 and 6 and 19 of the F.C.E. report", noting that "if [Brown] was required to rotate his trunk while lifting", the weight he would be capable of lifting would be reduced. The hand-grip test showed significantly decreased grip strength in the right (dominant) hand and there was limited range of motion in the cervical and lumbar spines. Testing for "inappropriate response (IR)" and symptom magnification were negative. The administrator indicated that "[i]nappropriate responses were NOT demonstrated during this test, therefore the FCE results can be considered valid. In the "Physical Capabilities" form completed subsequent to the FCE, the administrator indicated that Brown could only occasionally "lift/carry" 50 pounds, and frequently lift 20 pounds. He was limited to only occasional bending, squatting, kneeling, climbing, reaching, twisting, rotating, and crawling. Although the administrator found "no

---

*Maes v. Astrue*, 522 F. 3d 1093, 1097 (10th Cir. 2008).

restrictions" on Brown's use of his hands, one must question that finding in light of Brown's significantly decreased grip strength in his dominant hand. With regard to any treatments or medications that might affect Brown's ability to work, the administrator "deferred to MD." (Tr.Pgs.183-207).

The plaintiff argues that his June 2007 functional capacity assessment contradicts the ALJ's functional capacity finding because during the evaluation, he was unable to lift 50 pounds, showed decreased right-hand grip strength, and could not stoop, kneel, or crouch, and for these reasons, the examiner concluded he was capable of performing only sedentary work on a full-time basis (Tr. 119). The Commissioner argues that the plaintiff's reliance on this evidence to bolster his argument that the ALJ erred in finding him capable of performing the full range of medium work is misplaced because the examiner also noted that Plaintiff showed significant evidence of low effort and inconstant behavior, which ultimately undercuts the reliability of this assessment(Tr. 119).

The plaintiff also contends that, although a January 2006 functional capacity study revealed that he could perform medium work, it too, undermines the ALJ's finding that he could perform a full range of medium work because it showed a reduced lifting ability with trunk rotation, decreased grip strength in his dominant hand, and a limited ability to bend, squat, kneel, climb, reach, twist, rotate, and crawl. The Commissioner argues that the plaintiff's reliance on this functional capacity assessment to support his argument also must fail. First, the Commissioner points out that the January 2006 functional capacity assessment, upon which the plaintiff relies, was not completed by a medical source deemed "acceptable" within the regulations to establish the presence of an impairment. 20 C.F.R. § 404.1513. Instead, this assessment was completed by a physical therapist (Tr. 186). The Commissioner asserts that even more significant is the fact that this January 2006

assessment is wholly contradicted by an evaluation completed in December 2005, only one month earlier, by a licensed physician, Dr. Christopher Cenac. Specifically, Dr. Cenac noted that the plaintiff showed full and equal strength in his long toe extensors and no sensory deficits, muscle spasms, or muscle atrophy from disuse (Tr. 101). Additionally, Dr. Cenac characterized the plaintiff's grip strength as symmetrical and his gross and fine dexterity, grasping ability, and reflexes as normal (Tr. 101). He further wrote that the plaintiff exhibited no limitation of motion in his shoulders, elbows, hands, wrists, hips, knees, or ankles (Tr. 101). Based on his clinical observations, Dr. Cenac concluded that, provided he not lift over 50 pounds, the plaintiff could still perform medium work with no other physical limitations applicable (Tr. 102). The Commissioner argues that Dr. Cenac's clinical observations and opinion of the plaintiff's ability to perform work-related activities supports the ALJ's finding that he could perform a full range of medium work.

The Commissioner argues that the lack of corroborating clinical findings to support Plaintiff's allegations of significant limitation and pain, to the contrary, support the ALJ's decision that he could perform the full range of medium work. Equally contradictory to the plaintiff's allegations that the ALJ erred by finding him capable of performing a full range of medium work is the conservative course of treatment consistently opted by his treating physicians. The Commissioner asserts that the record shows that despite the radiological findings and the plaintiff's complaints of pain, his treating physicians regarded his back condition as a nonsurgical condition and treated him, instead, with physical therapy, pain medication, and epidural steroid injections (Tr. 67, 90, 67, 87, 116, 117). The Commissioner concludes that this course of treatment belies the plaintiff's contention that the ALJ erred in finding him capable of performing medium work. *See Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1991).

The issue most troublesome to the court is that the ALJ relied upon a lack of medical evidence to find Mr. Brown and his wife lacking in credibility. The medical evidence subsequently submitted to the AC could be seen as contradicting the ALJ's conclusion that Brown sought "very little, if any, medical treatment..." and that he "tended to embellish his limitations..." (Tr.Pg.20).

The Appeal's Council's failure to consider the additional medical records prejudiced the plaintiff. For this reason, this matter will be remanded to the Commissioner for a new hearing considering the totality of the medical evidence submitted in support of the plaintiff's disability claim.

Lake Charles, Louisiana, this 13 day of June, 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE